THE PEOPLE, Plaintiff in Error, *v.* PATRICK McDONALD, Defendant in Error.

It is an established principle of criminal law, that to constitute the crime of larceny, the taking must be under such circumstances that the owner might maintain trespass; and therefore, that the prosecutor must have been in the actual or constructive possession of the property at the time of the taking.

But where the property is received and carried away by the prisoner, with a felonious intent, from a person who is the agent for, or who stands in the position of the owner in respect to the possession, although the owner has never had the actual possession, yet the possession of such person is deemed his, and the crime is larceny.

Accordingly, where the prosecutor, having a draft for gold coin drawn upon a banker, accompanies the prisoner, who took the draft, under the pretence of aiding in getting it cashed, to a broker, who, upon the prisoner's indorsing the draft, undertook to get the gold upon it, and to deliver the gold to the prosecutor at a later hour on the same day, and the broker having obtained gold coin for the draft, the prisoner returned to the broker's office and received the gold in the absence of the prosecutor, and before the appointed hour, and converted it to his own use.— *Held*, the jury having found as a fact, that the prisoner, at the time he received the draft, had the felonious intent of converting the proceeds to

his own use, that the possession of the coin by the broker was so far the possession of the owner, that the prisoner was guilty of larceny in receiving and taking it away.

(Argued October 12th, 1870; decided November 15, 1870.)

ERROR to the Supreme Court, at General Term, in the First department, bringing up the record of the reversal by that court of the conviction of the defendant in error at the General Sessions, in the city of New York, on the 28th of March, 1870, for grand larceny alleged to have been committed in February of that year.

The prosecutor arrived in New York from California, having a draft for $2,500 in " gold coin," upon a banking house in that city, upon which he desired to procure the money. The prisoner expressed his willingness and ability to procure the money for him, and went with the prosecutor to the house, upon which the draft was drawn, where payment was declined, unless the prosecutor could be identified, and they also went to one or two banks and failed to procure the money, for the same reason. They then went to the office of a broker with whom the prisoner was acquainted, where an arrangement was made, by which the prisoner was to indorse the draft, and the broker was to procure the money, and have it at his office on the same day at three o'clock P. M., when the parties were to go there and the prosecutor was to receive the money.

The draft was accordingly indorsed by the prisoner and delivered to the broker, with the consent and in the presence of the prosecutor. Before the time arrived, the prisoner, in the absence of the prosecutor, went to the broker's office, procured from him the gold (less fifteen dollars which the broker retained for his charges), and carried it away; and when arrested a short time afterward, he had only about $1,600 of the gold, having secreted or disposed of the remainder. He was indicted and convicted for stealing the gold coin, and not the draft.

The judge charged the jury that they must be satisfied from the evidence, that at the time he received the draft, the prisoner then and there had the felonious intent to have it cashed, and appropriate the money arising therefrom wrongfully, fraudulently, and feloniously to his own use, otherwise the prisoner must be acquitted.

*Samuel B. Garvin* (district attorney), for the plaintiff in error, cited 2 East. P. C., 564; *People* v. *Call* (1 Den., 120); *Reg* v. *Johnson, et al.* (6 British Cr. Cases, 309).

*William F. Howe,* for the defendant in error, cited 2 East. P. C., 665; *Rex* v. *Jones* (Car. & M., 611); *Rex* v. *Summers* (3 Salk., 194); 2 Bishop's Crim. Law; 2 Russell on Cr., 30; *Wilson* v. *People* (Ct. of Appeals, Sept. 1868); *Rex* v. *Forsyth* (R. & R., 274); *Rex* v. *Fry* (R. & R., 282); *Rex* v. *Bond* (1 Denman's C. C., 517).

CHURCH, Ch. J.  The jury must have found, under the charge of the court, that the prisoner, at the time he received the draft, had the felonious intent of converting it and the proceeds, when received, to his own use, and that, in pursuance of such intent, he received and carried away the gold, and the evidence justified that conclusion.  It was objected on the trial, and is insisted upon here, that these facts are not sufficient to constitute the crime of larceny of the gold, on the ground that the prosecutor never had sufficient possession to maintain trespass.  It is a well established, but somewhat technical rule, that every larceny must include a trespass, and that the taking must be under such circumstances, as that the owner might maintain an action of trespass.  It follows, therefore, that the prosecutor must be in the actual or constructive possession of the property at the time of the taking. The application of these principles has been a fruitful source of litigation, and distinctions and refinements, which have rendered the administration of criminal justice in this class of cases exceedingly difficult.  A writer on criminal law very justly says: "There are so many varying circumstances in

which some sort of legal relation subsists between the wrong-doer and the owner of the property, so many circumstances under which persons misappropriate money to which, or to the owner of which, they stand, not as entire strangers, rais-ing nice points, as to whether there has been a trespass or not, that out of this doctrine of trespass, grows a vast amount of law, with almost countless decisions." If money, or property, is delivered by the owner to a person for mere custody, or charge, or for some specific purpose, the legal possession remains in the owner, and a criminal conversion of it by the custodian is larceny. A familiar illustration of this rule is the case of servants intrusted with the care of property belonging to their masters. (2 Russell on Crimes, 191, and cases there cited), and the same rule has been applied in some cases to those who had a special use of the property. (Id.) But an important and well estab-lished rule on this subject, growing out of this doctrine of trespass, is, that as against the custodian, the owner must at some time have had the possession, either actual or constructive, independent of his possession, and that the charge of larceny will not lie against the latter in any case where the only possession of the owner is that of the custo-dian. In the case of *Rex* v. *Walsh* (4 Taunton, 258); 2 Rus-sell on Crimes, 30, the prosecutor gave his check for £22,000 to procure the money and invest it in exchequer bills for him. The prisoner procured the money, invested a small portion of it as directed, and feloniously converted the balance; and it was held that he could not be convicted of stealing the money, because the owner never had possession of it. In *Rex* v. *Sullius* (R. & M. C. C. R., 129), the prisoner's mas-ter gave him a £5 note to get changed, which he did and ran away. The court held the conviction wrong, because the master never had possession of the coin, except by the hands of the prisoner. So in *Com.* v. *King* (9 Cush., 284), the court held that where a servant was sent to a bank to draw money upon a check, for his employer, and take up certain notes, and after receiving the bills, fraudulently converted

them, it was not larceny, but embezzlement, as the owner never had such a possession as would authorize him to sue the servant for trespass.

The case of *R.* v. *Johnson and Wright* (6 B. C. C., 309), cited by the counsel for the people, does not conflict, but is in harmony with this principle. In that case the court held that the presence of the prosecutor at the time the bank bills were obtained from the bank, and his direction to pay them to the prisoner, was the same as though the prosecutor had delivered them by his own hand.

But there are some modifications to this rule which are important in this case to observe. One is, that larceny may be charged in such a case, when the felonious appropriation is after the property reaches its ultimate destination. Ordinarily, it is not deemed to have reached its ultimate destination while it remains in the personal custody of the servant. (Bishop on Crim. Law, § 833; *R.* v. *Bazely*, 2 Leach, 4th ed., 835; *R.* v. *Harmon*, R. & R., 221.) But if there is no other assigned place of deposit than for the servant to keep it for his master, a felonious conversion is larceny. (*R.* v. *Watts*, 1 Eng. L. and Eq., 558; 24 id., 562.) Another modification of the foregoing rule is, when the property is received by the servant or custodian from another, who occupies the relation of agent for, or who stands in the position of, the owner, in respect to the possession. In such a case, although the owner has never had the actual possession, yet upon the principle that he may do, by another, what he can do himself, the possession of such other person is his possession.

If the prosecutor in this case had intrusted the draft to the prisoner for the purpose of getting the gold, and the latter had obtained it and converted it, it would not have been larceny, because the prosecutor would have had no possession but that of the prisoner. It is important, therefore, to inquire what effect the intervention of the broker had, and what relation he occupied to the parties. It is quite clear that the prosecutor never intended to intrust either the

draft or the gold with the prisoner. The latter was not per-
mitted to take or hold the draft, except in the presence of the
prosecutor. The prosecutor was present when the draft was
delivered to the broker, and consented to it. The act of
delivery was, therefore, in legal contemplation, his act as
fully as if he had delivered it with his own hand. The bro-
ker was to procure the gold and have it for the prosecutor at
his office at three o'clock. He was the prosecutor's, and not
the prisoner's, agent. He had no authority to deliver it to
the prisoner at all, or if at all, not before three o'clock, the
time appointed for the parties to meet. He certainly had no
authority to deliver it to be carried away. It cannot be
assumed that he did deliver it to the prisoner, to be taken
away, unless he was in complicity with the prisoner, of which
there is no evidence. It follows that the possession of the
broker was the possession of the owner, and when the pri-
soner received it from the broker, assuming that he had a
right to receive it, he did so for the mere purpose of retain-
ing it until the prosecutor came, and then delivering it to
him, and he occupied precisely the same position that he
would if the prosecutor had himself put the gold into his
hands to keep for him until three o'clock. It is true that the
prosecutor testified that he never had possession of the gold,
but it is evident that he only intended to say that he had
never had the manual possession. If the taking of the gold
from the broker was not a trespass, the carrying it away, hav-
ing only the bare custody of it, clearly was; and if done with
a felonious intent, as we are bound to assume by the verdict
of the jury, was larceny. These views are in accordance with
general principles, and are sustained by authority.

In *Rex* v. *Murray* (1 Moody C. C., 276), the prisoner was
convicted of embezzlement on the following facts: As clerk
of A., he received £3 from another clerk to pay some small
bills. He paid one bill of ten shillings and charged twenty
shillings, feloniously converting ten shillings. The court
held that this was not embezzlement, but larceny, " because

A. had had possession of the money by the hands of his other clerk."

In *Rex* v. *Longstreet* (Moody C. C., 187), the prisoner procured from a carrier's servant some property, claiming it as his own, when in fact it belonged to another person, and the court held his conviction of larceny right. In neither of these cases had the owner ever had the possession of the property except by another person, and yet the possession of such other person was deemed sufficient. (2 Bishop Crim. Law, § 723.)

Considerable stress was laid upon the fact that the prisoner indorsed the draft, and it was argued that this gave him a right to receive the money, and also gave him some interest in it. We have seen, that if he had a right to receive the money, it was only for the purpose of holding it until three o'clock. He had no right to carry it away. But a conclusive answer to this suggestion is that with the felonious intent, which the jury have found the prisoner had from the beginning, the indorsement must be regarded as a contrivance, a part of the machinery to get possession of the gold. (*Rex* v. *Hammon*, 1 Eng. C. C., 221.)

It was also urged on the argument that the indictment should have been for stealing the draft, instead of the gold. An indictment for stealing the draft could not be sustained. As we have seen, the prosecutor delivered the draft in contemplation of law to the broker himself. He intended to part with the possession and control of the draft, and never expected its return, and it was not in fact misappropriated. The precise use was made of it which the prosecutor intended.

The judgment of the Supreme Court must be reversed and that of the Sessions affirmed.

All the judges concurring, judgment of the Supreme Court reversed and conviction affirmed.