# Cases

# FIRST DEPARTMENT,

AT

## GENERAL TERM,

### March, 1882

---

## THE PEOPLE OF THE STATE OF NEW YORK EX REL. HENRY HENDERSON, APPELLANT, v. THE JUSTICES OF THE COURT OF SPECIAL SESSIONS OF THE COUNTY OF NEW YORK, RESPONDENTS.

*Larceny — one converting to his own use money given to him to have changed is not guilty of larceny.*

A saloon keeper, who had furnished twenty-five cents worth of liquor to a customer, received from him a twenty dollar gold piece with directions to go out and change it and bring back to the customer the change due to him. The saloon keeper went out for that purpose, gambled with the twenty dollar gold piece and lost it.

*Held*, that he could not be convicted of larceny.

*Hildebrand* v. *People* (56 N. Y., 394) and *Reg.* v. *Thomas* (9 Car. & Payne, 741) criticised and followed.

CERTIORARI to the Court of Special Sessions, to review the conviction of the appellant of petit larceny.

*William F. Kintzing* and *Maurice Meyer*, for the appellant

*John Vincent*, for the respondent.

DAVIS, P. J.:

The appellant was tried in the Court of Special Sessions on the sixteenth of August last, upon a complaint preferred by one Robert

538    PEOPLE ex rel. HENDERSON v. THE JUSTICES.

First Department, March Term, 1882.

Richardson, charging him with the larceny of a twenty dollar gold piece. He was convicted and sentenced to the penitentiary for three months. The appellant was a saloon keeper, and it appears by the testimony that the complainant went into his saloon and called for some lager. The complainant states what then took place, as follows:

"I gave him a twenty dollar gold piece, and he said that he had no change; I told him to go out and get change; he went out and did not come back again.

Q. How much did you owe him? A. Twenty-five cents.

Q. How much money did you give him? A. A twenty dollar piece.

Q. You gave it to him for the purpose of changing it, and he did not return? A. Yes, sir.

Q. You claim therefore, that he has taken that twenty dollars from you? A. Yes, sir."

On cross-examination he further testified as follows:

Q. "You gave this man the twenty dollars in his place of business? A. Yes, sir.

Q. He told you he was going out to get some change? A. Yes, sir.

Q. When did you next see him after you gave him the twenty dollars and he left the store? A. After five o'clock.

Q. How long was it after you gave him the money? A. I gave it to him between one and two o'clock, and I guess it was half-past five o'clock when I saw him again.

Q. Where did you see him then? A. I met him on the street.

Q. How far from his place of business? A. A block or two; I am not certain.

Q. You then spoke to him about the money? A. The detective who was with me did.

Q. What did he say? A. He said he wanted to play some kind of a game."

The appellant was called as a witness on his own behalf, and testified that the complainant came into his place and had something to drink, amounting to twenty-five cents; that he had only fourteen dollars in change, and told the complainant that he had not enough to change the twenty dollar gold piece. The complainant said "go out and get change and come back and give me my change;" that he went up the Sixth avenue as far as Thirtieth

PEOPLE ex rel. HENDERSON v. THE JUSTICES.    539

FIRST DEPARTMENT, MARCH TERM, 1882.

street to get change, and there he "played it" and lost the twenty dollars, and had no intention at the time he received the money of cheating the complainant out of it.

If the question presented by this case were a new one, we should have no hesitation in holding that the conviction was justified by the evidence, for it is clear that there was no intention on the part of the complainant in handing the twenty dollar gold piece to be changed to part with his property in it, but that he simply parted with possession for the specific purpose of having it changed so as to enable him to pay to the appellant twenty-five cents out of the change; and that the appellant having it for a specific purpose and without property, his possession was in law the possession of the owner of the coin, and his subsequent act in gambling it away was such a conversion as ought, and in our opinion does, constitute the crime of larceny. But the case is precisely parallel in all its features to that of *Reg.* v. *Thomas* (9 Car. & Payne, 741). In that case the prisoner took a sovereign to go out and get it changed but never returned either with it or the change. COLERIDGE, J., held that the prosecutor having permitted the sovereign to be taken away for change could never have expected to receive back that specific coin; he had therefore divested himself at the time of the entire possession of the sovereign, consequently there was not a sufficient trespass to constitute larceny.

The learned judge overlooked *Ann Atkinson's case* (Cas. Cro. Law, 247), in which it was held that if one stole guineas delivered for the purpose of being changed into half guineas it was larceny. That case is cited approvingly in Hawkin's Pleas of the Crown (vol. 1, p. 210), and again in 2 Russell on Crimes (p. 21), in both of which authorities the following is laid down as the law in such cases: "So, also, if a watchmaker steal a watch intrusted to him to clean, or if one steal clothes delivered for the purpose of being washed, or guineas delivered for the purpose of being changed into half guineas, or a watch delivered for the purpose of being pawned, in all these circumstances the goods taken have been thought to remain in the possession of the proprietor, and the taking of them away held to be felony." Hawkins cites to each of these examples an authority on which it rests.

But we are not at liberty to follow our own opinion of this case

540   PEOPLE ex rel. HENDERSON v. THE JUSTICES.

FIRST DEPARTMENT, MARCH TERM, 1882.

because the Court of Appeals have distinctly recognized the case of *Reg.* v. *Thomas* as sound law.

In *Hildebrand* v. *People* (56 N. Y., 394) the facts were these: The prosecutor handed to the prisoner a fifty dollar bill to take out ten cents in payment for a glass of soda. The prisoner put down a few coppers upon the counter and when asked for the change he took the prosecutor by the neck and shoved him out of doors and kept the money. The question was whether larceny could be predicated upon those facts. The Court of Appeals, affirming the decision of this court, held that the prisoner was rightfully convicted. The prisoner relied upon the case of *Reg.* v. *Thomas*, and after reciting the facts in that case the court proceeded to distinguish it from the one then at bar by stating that in the Thomas case "all control, power and possession was parted with, and the prisoner was intrusted with the money and was not expected to return it. Here, as we have seen, the prosecutor retained the control, and legally the possession and property. The line of distinction is a narrow one, but it is substantial and sufficiently well defined."

The learned chief judge had previously in describing the transaction in Hildebrand's case said as follows: "But in this case I do not think the prosecutor should be deemed to have parted either with the possession of or property in the bill. It was an incomplete transaction to be consummated in the presence and under the personal control of, the prosecutor. There was no trust or confidence reposed in the prisoner, and none intended to be. The delivery of the bill and the giving change were to be simultaneous acts, and until the latter was paid the delivery was not complete. The prosecutor laid his bill upon the counter and impliedly told the prisoner he could have it on delivering to him forty-nine dollars and ninety cents. Until this was done neither possession nor property passed, and in the meantime the bill remained in legal contemplation under the control and in the possession of the prosecutor."

This opinion had the unanimous concurrence of the court. In the *People* v. *McDonald* (43 N. Y., 61), the same learned judge said: "If money or property is delivered by the owner to a person for mere custody, or for some specific purpose, the legal possession remains in the owner, and a criminal conversion of it by the cus-

todian is larceny.   A familiar illustration of this rule is the case of servants intrusted with the care of property belonging to their masters."

In *Smith* v. *People* (53 N. Y., 111), it was said by Allen, J. : " The rule is, that when the delivery of goods is made for a certain special and particular purpose, the possession is still supposed to reside, not parted with, in the first proprietor."

In Hilderbrand's case, the possession of the bill was delivered in the bar-room of the accused, for the purpose of being changed to take out the sum of ten cents in payment for a glass of soda.   The prisoner took and kept the bill and refused to deliver the change. In this case the twenty dollar gold piece was delivered in the saloon for the purpose of being changed.   The prisoner took the same for the purpose of getting it changed, went out to get the same with the consent of the complainant, but instead of getting it changed, he went to a gambling place; and lost it in gambling.   He had nothing but a naked manual possession for a specific purpose, totally without property.   The title to the coin remained in the complainant, and he could at any moment have recalled the possession before the coin was changed.   If it had been taken from the possession of the prisoner by violence, the owner could have maintained trespass for injury to his property, and it would have been entirely proper, if the appellant had been robbed of the coin, to have averred, in an indictment for the robbery, the ownership in the complainant.

The distinction in the cases is so extremely " narrow" that we should have felt entirely justified in disregarding it, but for the fact that the Court of Appeals in *Hildebrand* v. *The People*, gave its sanction to the case of *Reg.* v. *Thomas*, and declared it to be sound law, thereby holding in effect that a conviction of larceny could not be sustained in a case like this.

We are constrained, therefore, to accept that decision as authority, and consequently, the conviction must be reversed and the appellant discharged.

