## Supreme Court—General Term—First Department.

## PEOPLE v. MORSE.

### March, 1885.

#### LARCENY AND FALSE PRETENSES UNDER REVISED STATUTES.

Where, by a trick or artifice, the owner of money is induced to deposit the same with the prisoner for a particular purpose, without intending to part with the title, the money to be retained only for the accomplishment of such purpose, and it is the design and intent of the prisoner, at the instant of time the money is delivered to him, to obtain and appropriate it feloniously to his own use, without the consent of the depositor, and against his will, under the Revised Statutes the offense is larceny.

If the depositor parts with the money voluntarily upon a contract, partly to secure the depositary from loss from a servant, and partly for interest for its use, the offense is not larceny.

APPEAL from a judgment of the court of General Sessions of New York county, convicting defendant, Carrie R. Morse (otherwise known as Minnie West), of grand larceny, alleged to have been committed October 12, 1882.

The defendant was indicted in said court, April 22, 1884, and on June 10, 1884, said indictment was tried before Hon. HENRY A. GILDERSLEEVE, one of the judges thereof, and a jury, who found the defendant guilty, whereupon she was sentenced by the court to imprisonment in the penitentiary of the city of New York for two years.

The facts are as follows:

The prisoner advertised for a clerk, and an applicant appearing in the person of the witness, Hattie Herder, in response to the advertisement, the prisoner made an unusual demand for cash security for the faithful performance by Miss Herder of her duties. An offer to furnish security in the usual form was declined. Miss Wilson, a friend of Miss Herder's, thereupon

called upon the defendant, and, having listened to a number of extraordinary reasons why security in cash was required, finally agreed to put it up. On October 12, 1882, she gave six one-hundred-dollar bills to the defendant, taking the receipt set forth in the opinion. Miss Herder never got the position. The witness, Miss Wilson, never got the money, for the defendant shortly after disappeared and was never seen by the witness, Miss Wilson, until July, 1883.

*Barlow & Rockwell*, attorneys, and *John O'Byrne*, of counsel, for the prisoner, appellant.—I. In order to constitute the crime of grand larceny, as charged in the indictment, trespass must be proved, and where this element is lacking, larceny will not lie, even though fraud be proved. "When the possession and the property are delivered voluntarily, without fraud or artifice to induce it, the *animus furandi* will not make it larceny, because in such cases there can be no trespass, and there can be no larceny without trespass." Hildebrand *v.* People, 56 *N. Y.* 396. "A distinction is made between a bare charge or special use of the goods and a general bailment; and it is not larceny if the owner intends to part with the property and deliver the possession absolutely, although he has been induced to part with the goods by fraudulent means." Smith *v.* People, 53 *N. Y.* 114 ; 2 *Russell on Crimes*, 28. "It is a well-established but somewhat technical rule, that every larceny must include a trespass, and that the taking must be under such circumstances as that the owner might maintain an action of trespass." People *v.* McDonald, 43 *N. Y.* 63. "To procure the possession of property by artifice or trick, with a felonious design, the title of the owner remaining unchanged, is larceny, but if the owner is deceived into the surrender of the title, as well as the possession of his property, by means of fraudulent representations, then the offense is that of obtaining money under false pretenses." Kelly *v.* People, 6 *Hun*, 509 ; 2 *Russell on Crimes*, 35, 6 ed. "If a man, meaning to steal a neighbor's goods, fraudulently prevails on the neighbor to deliver them to him, under the understanding that the property therein is to pass, he commits neither larceny nor any other crime, unless the transaction

amounts to an indictable cheat, etc." 1 *Bishop Crim. Law*, § 583.
*a.* If by any consideration, express or implied, or agreement, or
*indicia* of ownership, the property is transferred, an indictment
for larceny will not lie. Zink *v.* People, 77 *N. Y.* 122. "An
indictment for larceny will not lie, if it appear that the articles
alleged to be stolen have been transferred so as to create any
right or property, or by any consideration, express or implied,
or agreement." Wilson *v.* State, 1 *Porter* (*Ala.*) *Rep.* 118.
*b.* The owner voluntarily consenting to part with the property,
although gross fraud be practiced in obtaining consent, larceny
will not lie. Bassett *v.* Spofford, 45 *N. Y.* 391 ; People *v.*
Call, 1 *Denio*, 123. *c.* Larceny will not lie unless the bailee
was to deliver the identical chattel or money. Reg. *v.* Hoare,
1 *Fost. & Fin.* 647 ; Reg. *v.* Garrett, 2 *Fost. & Fin.* 14 ; Reg.
*v.* Hassall, *Leigh & C. Cr. C.* 58.

II. A promise essentially future and six per cent. interest
for the use of the property being given, larceny will not lie.
Ranney *v.* People, 22 *N. Y.* 417 ; 3 *Greenleaf Evidence*, 143,
§ 162.

III. The distinction, although fine, is quite clear, between
larceny and obtaining money under false pretenses. Thorne
*v.* Turck, 94 *N. Y.* 95, citing Loomis *v.* People, 67 *Id.* 329.

*Randolph B. Martine*, district attorney, and *De Lancey
Nicoll*, for the people, respondent.—I. Where, by a trick or
artifice, the owner of property is induced to part with the pos-
session or custody to one who receives it *animo furandi*, the
person so taking it is guilty of larceny. 1 *Hawkins P. C.*
215 ; 2 *Russell on Crimes*, 21 ; People *v.* McDonald, 43 *N. Y.*
617 ; Smith *v.* People, 53 *Ib.* 111 ; Hildebrand *v.* People, 56
*Ib.* 394 ; People *v.* Loomis, 67 *Ib.* 329 ; Justices of Sessions *v.*
People *ex rel.* Henderson, 90 *Ib.* 121 ; 1 *N. Y. Crim.* 83.

II. The evidence constitutes a larceny, as charged in the
indictment, and not an obtaining of property by false pretenses.
The distinction between larceny and false pretenses depends
upon the intention of the parties. Loomis *v.* People, 67 *N.
Y.* 329. The question in the case at bar is, therefore, whether
Miss Wilson, in delivering her six one-hundred-dollar bills to
the defendant, intended to part not only with the possession

but also the title, or whether she delivered them to the defendant, for the special and particular purpose of security for the clerical conduct of Miss Herder. For when the delivery of goods is made for a special and particular purpose, the property and title still reside in the first proprietor. Smith *v.* People, 53 *N. Y.* 111. The receipt says in terms: 1. That the bills were delivered into the custody of the defendant for a special and particular purpose, to wit: as security for Miss Herder's conduct as the defendant's clerk. 2. That the specific bills so delivered were to be returned to the witness, Miss Wilson, upon the termination of the contract. It is to be noted that there is no agreement to repay the sum of six hundred dollars upon the contingency mentioned in the receipt; but the language is, "return this six hundred dollars"—these very six one-hundred-dollar bills which were that day delivered into the custody of the defendant. Every element necessary to constitute the crime is present. The naked possession of the bills was obtained by the defendant through the medium of a fraud, the prosecutrix delivering them only for a single and specific purpose, and retaining at all times her title to them. The fact that interest was to be paid on six hundred dollars during the period that the bills remained in the custody of the defendant, cannot alter the transaction. That part of the agreement is merely an additional evidence of fraud, as it was an additional inducement held out by the defendant to obtain the prosecutrix's money. Had the deposit been a bond or other tangible property, no one, in case of the appropriation of it by the defendant, would have pretended to argue that a larceny was not committed, because the defendant promised to pay interest on its value.

BRADY, J.—The appellant advertised for a clerk, and Hattie Herder, having applied for the place, was told by her that she must have security in cash. And this demand was predicated of the important and responsible nature of her business, which she designated as an investment bureau of which she was the president, and in regard to which she was under heavy bonds. She made other and impressive statements about it, all calculated to inspire confidence in her ability and integrity. The

sum named was six hundred dollars, and the complainant finally consented to deposit with her that sum, not for general purposes, but for one specific purpose, namely, as security for the fidelity of her friend Hattie Herder, whom she desired to serve. On the deposit being made, and contemporaneous with it, she received from the appellant the following acknowledgment:

"NEW YORK, October 12, 1882.

"Miss Helen Wilson has this day deposited in my hands six hundred dollars ($600), as security for the faithful performance of the duties of Miss Hattie M. Herder, who it is agreed shall enter my employ on Monday, October 23, 1882, and will continue to work for me every day, except Sundays, from 10 A. M. till 3 o'clock P. M., at the salary of twelve dollars per week ($12), payable weekly for the term of six months or longer if mutually agreeable. It is further agreed that if either Miss Hattie M. Herder or myself wish to terminate this contract, either party must give thirty days' notice, in which case *this six hundred* dollars will be returned to Miss Helen Wilson, and all salary due Miss H. M. Herder paid to said Miss H. M. Herder up to date of her leaving my employ. I also agree to pay six per cent. interest on this six hundred dollars ($600) during the time it remains in my hands, payable to Miss Helen Wilson.        "MRS. C. R. MORSE.

HELEN WILSON."

It will be observed that the agreement was that if she or Miss Herder wished to terminate the contract either might give a notice of thirty days, "in which case *this* six hundred dollars will be returned" to Miss Wilson. The sequel was that Miss Herder, in the language of the complainant, "never got the situation," and the complainant never got the money. For this transgression, the appellant was indicted for larceny under the old law, the provisions of the new Penal Code not being applicable. The appellant, through her counsel, by able and ingenious efforts essayed to demonstrate that if these facts constituted any crime it was not larceny. The charge of the learned justice in the court below was very conservative of the appellant's rights in this respect, and the elements of the crime

of larceny carefully, fully, and conscientiously presented. The jury could not have failed to understand them. The proposition was distinctly stated that if the money was deposited for a particular purpose, and to be retained for its accomplisment and it was the design of the appellant to obtain it feloniously and appropriate it feloniously to her own use, without the consent of the complainant and against the will of the latter, it was their duty to convict of larceny. The learned judge instructed the jury that larceny was the felonious taking of the property of another against his will with the intention of appropriating it; and that there could be no larceny without a trespass. And further, that a felonious taking implied the consent of the owner to be wanting; and further, that if the complainant parted with the money voluntarily upon a contract and partly to secure the appellant from loss from a servant, and partly for interest for its use, the defendant must be acquitted under the indictment and he submitted the issue to the jury as follows:

" If you are satisfied from the evidence beyond any reasonable doubt that it was the design of the defendant, Carrie R. Morse, to fraudulently and feloniously obtain the complainant's money and convert it absolutely to her own use without the complainant's consent, and that in pursuance of that design, the defendant so obtained six hundred dollars by the means and in the manner and under the circumstances testified to by the people's witnesses, with the intention of converting the money absolutely to her use without the consent and against the will of the complainant, and that the complainant did not intend to part with the six hundred dollars absolutely, but only gave the accused temporary possession thereof as security for the faithful performance of the duties of Hattie M. Herder, I charge you that you can and ought to convict the defendant of grand larceny, otherwise she should be acquitted. Did she part with the money for the specific purpose of securing the defendant against any loss by reason of the acts of Hattie M. Herder while in her employ; was that the only reason she parted with it; was that the intention she had when she gave up the physical possession of it to the defendant? If such you find to be the fact, and then you further find, as I have instructed you

here, that all the acts disclosed by the evidence do constitute a scheme, a trick and device for the purpose of feloniously getting the money, then your verdict shall be guilty."

The appellant had the benefit, therefore, of a clear and able explanation of the crime charged, and as fully and fairly as it could be made. The requests made were charged equally as fully and fairly, and nothing was refused to which the appellant was entitled. The learned judge, for example, charged that the jury must find that at the instant of time when the money was delivered to the defendant, her intention was then felonious, and that no subsequent felonious intent could lead up to her guilt. The cases sustain the controlling views expressed and render the charge unexpectionable. People *v.* McDonald, 43 *N. Y.* 61; Smith *v.* People, 53 *Ib.* 111; Hildebrand *v.* People, 56 *Ib.* 394; People *v.* Loomis, 67 *Ib.* 329; Justices of Sessions *v.* People *ex rel.* Henderson, 90 *Ib.* 121; 1 *N. Y. Crim.* 83.

The difference, under the law applicable herein, between larceny and obtaining money by false pretenses, is subtle, and perhaps involves a delicate border-line; but is not difficult of appreciation when the larceny is stated to rest upon a deposit of money for a specific purpose feloniously obtained; that is, with a felonious design and also with a felonious intention to appropriate it to his own use by the receiver, when obtained; for other purposes, without the consent and against the will of the depositor. It is not then obtained by a voluntary transfer, and the title to the money does not pass to the receiver to be used by him as he may prefer. In this case the *animus furandi* can be easily discerned from the *modus operandi* of the appellant. The money was asked for and given as security only, not as an investment or loan, but for a particular purpose, to be placed away, as it were, to meet the emergency, if one arose, for which it was intended, requiring no change for that purpose, and being for the purpose intended, absolute in form and substance. The device itself, was a skillful and ingenious trap for the unwary, and may be characterized as infamous in conceit and diabolical in practice. It was to deceive the honest applicant for honest employment—the humble seeker of toil for the reward of industry and fidelity, and was a shameful proceeding. The punishment is just, and however we may

regret that such skill should drift into such unhallowed schemes, we cannot sympathize with the evil doer. The subjects discussed are the only ones which the record presents for particular examination. The exceptions otherwise taken are valueless. It is enough to say this of them. It is quite evident that the contention upon the trial was as to the nature of the offense, and that was determined upon proper treatment and instruction. The judgment must, therefore, be affirmed.

DAVIS, P. J., and DANIELS, J., concur.