Barker, J.
On the trial the people called as a witness William Conklin, named in the indictment, who was an accomplice, and without whose evidence the proofs were insufficient to secure a conviction of either of the defendants. On the trial the point was made and the court was asked to rule, that the testimony of the accomplice was not sufficiently corroborated to warrant a conviction within the rule as declared by section 399 of the Code of Civil Procedure. The prosecutor testified that twenty-one fleeces of *124 his wool, weighing about ninety pounds, were feloniously taken and carried away from his barn. The accomplice testified, among other things, that he and the defendant Willie Sanborn, in the night time and by a pre-arrangement between themselves, went to the prosecutor’s barn and carried away the wool and secreted the same under a culvert in the highway, not far from the home of the defendants; that the next morning he communicated to the defendant, Willie Sanborn, the fact that he and Willie had stolen the wool, informing him where it was secreted; He further testified that he applied to the defendant William Sanborn for the loan of his horse for the purpose of taking the wool to Nunda and there to sell it; that the defendant William replied that he had business at Angelica ; that he had better take the wool to that place and by the time he reached there, he William, would have the wool sold; that with the consent of the defendant William, he took his horse and hitched it to a wagon belonging to another person and he and Willie, in the night time of that day, went to the culvert and loaded the wool into the wagon, and by six o’clock the next morning he was in Angelica and there met the defendant William Sanborn at the ware-house of Joseph H. Rutherford, to whom the witness sold the wool and from whom he received the pay therefor, and that while the wool was being delivered William Sanborn was present; that immediately after the sale and delivery of the wool he and William Sanborn went to a hotel in the village of Angelica and that for the next two days they were together in Angelica and other villages in the county of Allegany.
The corroborating evidence upon which the people relied was not disputed and was to the effect, that the defendant, Willie Sanborn, lived in the family of William San-born, and that the accomplice had long been an acquaintance and at times been a member of William Sanborn’s family ; and that the horse used to draw the wool to Angelica belonged to the defendant William Sanborn, who, early the next morning, met Conklin in Angelica, at the ware-house of the person to whom the wool was sold ; and that after the sale was completed they met at a hotel in the village, conversed together, visited the bar kept therein and drank liquor together, and then went to the stable where Conklin, had left the horse and there they had private conversations together under circumstances plainly indicating that they did not wish the same to be heard by the person in charge of the stable; and that the accomplice and William San-born were together, away from their families for the next two days in the neighboring towns and villages. All these circumstances certainly have some tendency to corroborate the evidence of the accomplice; and seem to satisfy the re *125 quirement of the Code which forbids a conviction upon testimony of an accomplice, unless he be corroborated by some other evidence, that tends to connect the defendant with the commission of the crime. The law is complied with, if there is some evidence tending to connect the defendant with the commission of the crime so that the conviction will not rest entirely upon the evidence of the accomplice. People v. Jaehne, 103 N. Y., 182; 3 N. Y. State Rep.,11; People v. Everhardt, 104 N. Y., 592; 5. N. Y. State Rep., 793; People v. Elliot, 8 id., 703.
The defendant, William, was a witness in his own behalf, and he either explained or denied all the facts and circumstances tending to establish his guilt as testified to by the accomplice, so that if the jury believed his evidence he should have been acquitted. The jury would have been justified in finding as matter of fact, that William Sanborn was not informed that the wool had been stolen, until Conklin appeared in Angelcia with the wool in a wagon, drawn by the defendants horse, and that there, for the first time, he learned that Conklin intended to come to Angelica at that time, or to use the horse for the purpose of drawing the wool to that place, and that their meeting there was not pre-arranged.
The court, among other things, charged the jury, that if William Sanborn did not know the fact that the wool was stolen, then he did not in any way aid or abet in the commission of the crime by loaning his horse to draw the wool to Angelica; but if he ascertained that the property was stolen after he arrived at Angelica and he aided and abetted in the sale of the wool, knowing the fact that it had been stolen, then he might be convicted of the crime charged in the indictment. To the latter part of his charge the defendant, William Sanborn, excepted.
I think that the part of the charge excepted to was erroneous.
The indictment charged the defendants with taking and carrying away the property of another, with a felonious purpose of depriving the owner thereof and converting the same to their own use, which constitutes the crime of larceny as defined by the common law, and by the present statutes of this state The felony charged in the indictment was fully consummated at the time that Conklin appeared in Angelica with the wool, and if Sanborn was there for the first time informed that it was stolen property, then he was not guilty as a principal offender and should have been acquitted.
Parties to the commission of crime are either principals or accessories, as classified or defined by sections 28, 29 and 30 of the Penal Code, By section 29 a principal is defined *126 to be ‘ a person concerned in the commission of a crime, whether he directly commit the act constituting the offense or abets in its commission, and whether present or absent, and a person who directly or indirectly counsels, commands, induces or procures another to commit a crime is a principal.” This definition embraces and defines the offense heretofore known as being an accessory before the fact and making a person who is guilty of .that crime principal to the felony, and he may be tried and convicted as such. An accessory before the fact as defined by the common law was a person being absent at the time the felony was committed who procured, counseled, commanded or aided another to commit a felony, and he could not be tried and convicted until after the conviction of the principal offender. 1 Hale, 658 ; Archbald’s Crim. Plead., 8.
The common law recognizes a difference between a principal to a crime and an accessory thereto before the fact, and a person proven by the evidence to be a principal cannot be convicted on an indictment charging him with being an accessory before the fact. They were by the common law regarded as distinct offenses. The effect of the provisions in section 29 of the Penal Code is to abolish the offense of being an accessory before the fact as defined by the common law. Before the Code, to constitute one a principal in felony, he must have been present at the commission of it, btit he need not be so near as to be an eye and ear witness to the criminal act. His presence may be constructive, and such constructive presence is made out when it. is shown that he acted with-another in the pursuit of a common design ; that he acted at one and the same time for the fulfillment of the same preconcerted plan and was so situated as to give aid to his associates with a view of insuring success to the common enterprise. A waiting and watching at-a convenient distance is enough ; if, in a case of larceny, he be placed where he may learn of the whereabouts and movements of the owner of the property and be prepared to allure him away, or to retard him, or to give timely warning of his approach. McCarney v. The People, 83 N. Y., 408.
The accomplice does not claim, in his evidence, that William Sanborn was present at the original taking of the property and carrying the same away from the barn of the owner; and the clefendant denies that he had any suspicion that the wool had been stolen until he saw it at the warehouse where Conklin disposed of it. So then, if the jury believed the evidence of the defendant, William San-born, he was not a principal as defined by the 29th section of the Codo, for the larceny charged in the indict *127 ment was committed before William Sanborn was informed of the fact.
In the case of the People v. Wixon, (5 Parker Crim. Rep., 119), Wixon was indicted, with others, for the crime of burglary and larceny, and it appeared that he instigated the other parties indicted with him, to commit the burglary and larceny, and that the property, when stolen, was taken to his house and there concealed with his assistance and advice. It did not appear from the evidence in the case that Wixon was present when the burglary and larceny was committed; nor was he so near that it could be said that he was constructively present. On the trial the jury were instructed: that although Wixon had no part in the breaking the store and taking the goods, yet if he knew it was done by Lookwood and Lee, or either of them, and the goods were immediately taken to his house, and he aided in furnishing a box to secrete the goods and directed where they should be placed to avoid discovery and prevent the owner from finding them, so as to convert them to his own use, then he was guilty of larceny. This was held to be erroneous, for the reason that the jury were warranted, by the instructions, in convicting Wixon as principal, although they had relied upon the evidence, that he was neither actually or constructively present, but miles away from the place where the burglary and larceny were committed. This case was approved in the case of the People v. Hall, (57 Howard, 342) and the same rule was stated in the case of the People v. Lyon, (99 N. Y., 210) as the persons who committed the burglary and larceny were guilty parties, Wixon, who counseled and advised the commission of the offence but who was absent when it was perpetrated, was, as the law then stood, an accessory before the fact and could not be tried and convicted on an indictment charging him with being a principal. This-case clearly recognizes the distinction between a principal to a felony and that of being an accessory before the fact.
The offense of being an accessory to a felony after the fact is preserved by the Penal Code and is defined in section 30, to be “a person who, after the commission of a felony, harbors, conceals, or aids the offender, with intent that he may avoid or escape from arrest, trial, conviction or punishment, having knowledge or reasonable grounds to believe that such offender is liable to arrest, has been arrested, is indicted or convicted, or has committed a felony is an accessory to the felony.” This is substantially the definition given by the common law to the offense of being an accessory after the fact. It is made, now, as then, a substantive offense, distinct from the felony, and to authorize a conviction for that crime the accused must be indicted and tried as such. No such charge is set forth in the indictment *128 upon which William Sanborn stands convicted, and it may be added there is no evidence that Conklin, during the time that he was in Sanborn’s company immediately following the sale of the wool, attempted to or thought of escaping to evade arrest. If the jury believed, and from the evidence they would have been justified in reaching the conclusion, that William Sanborn was ignorant of the fact that a larceny had been committed until the time he met Conklin in Angelica then he is innocent of any crime and the judgment should be reversed.
Under the new classification and definition of offenses, as contained in the Penal Code, receiving stolen goods, knowing them to have been stolen, remains a criminal offense (§ 550), and is punishable. It does not constitute larceny for a person to stand by and witness a sale of goods by the thief knowing that he had not stolen the same, as the people contend in this case.
If the fact be, as testified to by the defendant, that he did not know the wool was stolen until Conklin had taken it to Angelica and there offered the same for sale, then there was a failure of proof to establish the felony as charged in the indictment. In that view of the case there was no proof that the defendant William Sanborn took and carried away the wool. After Conklin reached Angelica with the wool Sanborn did not have the wool in his actual or constructive possession, nor did he sell or offer to sell the same to Mr. Rutherford, who purchased it of Conklin and paid him for it. Conklin does not claim that Sanborn had anything to do with the wool after he first saw him in Angelica. They met at Rutherford’s warehouse where the sale took place; but neither Conklin or Rutherford pretended that the defendant had anything to do with the sale. Rutherford says he saw Sanborn on the sidewalk, but he is unable to say that Sanborn came inside of the building, and he had no conversation with him. Conklin testifies that when he reached the village of Angelica he saw the defendant in the road, and when he reached the warehouse, Sanborn was there; that he himself made the sale to Rutherford, and while the wool was being weighed Sanborn came inside of the warehouse and said to him: “You are selling wool, are you?” To which Conklin replied: “Yes,” and then Sanborn inquired the price of wool. The defendant in his evidence says, that he saw his horse standing in front of the warehouse and he then walked to that place for the purpose of making inquiry how his horse came to be there; that he went inside and saw the wool was being weighed and that he had no con - versation with Conklin or Rutherford and then walked away alone.
*129 It is unreasonable to contend, upon the strength of this evidence, that the defendant was guilty, at Angelica, of taking and carrying away the wool from the actual posses^ sion of the owner or of any other person. He had no possession of the wool, in any sense, whatever, after the thief carried it to the place where he sold it. The offense charged and which the people sought to support by proof, constituted larceny as that offense is defined by the common law and the Revised Statutes. Under the Penal Code the crime of larceny includes that offense as defined by the common law and by the Revised Statutes, and is committed when a person takes personal property from the possession of the true owner, or any other person, with the intent to appropriate the same to his own use or that of any other person. Penal Code, § 528.
The act or acts which would constitute larceny at the common law constitute that offense now and it is necessary, under the present system of procedure in criminal cases, to charge in the indictment the specific act or acts alleged to have been committed, which constitute the offense, and to prove the same by competent proof before the accused can be rightfully convicted. People v. Dumar, N. Y. State Rep., vol. II, page 19; reversing S. C., 3 N. Y. State Rep., 490.
In the latter case it was stated that the general rule of pleading was not substantially changed by any of the provisions of the Code of Criminal Procedure, and that the proof must sustain the facts alleged as required under the old system of criminal pleading. To constitute larceny by taking personal property from the possession of the owner the general rule is that it must be done under such circumstances as to constitute trespass. People v. McDonald, 43 N. Y., 61; Thorne v. Turck, 94 id., 90; People v. Dumar, supra; Commonwealth v. Adams, 7 Gray, 43.
Nothing was done at Angelica, by Sanborn, which would constitute an act of trespass so that the owner could maintain a civil action therefor for any injury sustained by him by reason of Sanborn’s taking possession of and carrying away the wool. •
Tne court charged the jury that if the defendant aided and abetted the thief in selling the wool at Angellica, then they might convict him of the crime charged in the indictment. This statement of the rule of law, as applicable to the case, permitted the jury to find the accused guilty of the offense charged in the indictment without establishing the fact alleged, that he took and carried away the wool from the possession of the true owner. A person may aid and abet another in the sale of an article of personal prop *130 erty without having the same in his possession or under his control. One aids another in making a sale of property by simply informing him where a market for the goods, may be found, or by giving the name of a dealer, or any information as to the state of the market and the value of the goods intended to be sold.
If the jury believed the evidence of the accused that he had no knowledge that the wool had been stolen until after he saw it in the possession of Conklin in Angelica, and in disposing of the exceptions now under consideration we must act upon the assumption that they so found, then, under the charge, a conviction has taken place without proof of the fact that the accused had possession of the goods, either actual or constructive. However guilty the defendant William Sanborn may be in a moral sense, I am satisfied that he is not guilty of the offense charged in the indictment if he was ignorant of the fact that the wool had been stolen up to the time Conklin offered it for sale in Angelica.
If another trial should take place upon this indictment and the people should claim then, and their evidence tended to prove on the trial now under review, that William San-born was informed of the larceny while the wool was secreted under the culvert, and advised the removal and. sale of the same, then the question may arise whether the removal therefrom should be regarded as an original taking and asportation of the goods and thus bring the defendant William Sanborn within the definition of a principle, as now defined by the Penal Code, although he was not actually present when the taking and asportation took place. If the parties who removed the wool from the bam to the hiding place afterwards abandoned their intention to convert the property to their own use, clearly, the taking and carrying away of the same from under the culvert constituted a new crime.
I also incline to the opinion, that, as the owner was not deprived of the title to his property by the first taking, and in the eye of the law the same was in his possession while it was in the hiding place, the removal therefrom may be regarded as a new taking, all persons who were engaged in that act became offenders and guilty of the crime of larceny. In Hales Pleas of the Crown (vol. 1, page 507), in treating as to what may constitute a taking and asportation this illustration is made: “If‘A’steal the horse of ‘B’and after that ‘ C ’ steal the same horse from ‘A,’ in such a case ‘ C ’ is a felon both as to £A’ and as to ‘ B,’ for by the theft by £A’ ‘ B ’ lost not the property, nor in the law, the possession of his horse, or, other goods.” I am of the opinion that. *131 the removal of the goods from under the culveTt may be charged as a new caption and asportation.
I express no opinion, however, upon the question whether the offense based upon such new taking is charged in this indictment.
As to the defendant Willie Sanborn, I think the evidence was sufficient to justify his conviction. A witness, not the accomplice, testified, in substance, that while under arrest he admitted to him that he, with Conklin, stole the wool; and another witness testified that he borrowed the wagon in which the wool was carried away.
In my opinion the judgment should be reversed and a new trial ordered as to William Sanborn; and as to the defendant Willie Sanborn, the conviction and judgment should be affirmed.
But my brethern are of the opinion that the judgment should be affirmed as to both defendants, for the reason that, the evidence justified the conviction of the defendant William Sanborn of the crime charged in the indictment, and there was no error in the charge, although the jury believed, that he was ignorant of the fact that the wool was stolen until after Conklin reached Angelica with the wool the morning the same was sold to the dealer in that place.
Judgment and conviction affirmed.
Barker, J. dissenting.